

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DISTRICT

|  |  |  |
|---|---|---|
| TRANSAMERICAN EQUIPMENT COMPANY, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 7:17-CV-00481-LSC |
| INDUSTRIAL ASSETS CORP., *et al.* | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OF OPINION

Plaintiff, Transamerican Equipment Company, LLC ("Transamerican" or "Plaintiff"), originally filed this action in the Circuit Court of Tuscaloosa County, Alabama seeking compensatory and punitive damages resulting from an auction sale alleging fraudulent suppression, fraud and fraudulent inducement, conspiracy, breach of contract, and violation of two North Carolina statutes including Chapter 85B, Section 8 of the North Carolina General Statutes (the Auctioneer Statute), and North Carolina Generate Statute § 75-1.1 (the Deceptive Trade Practices Act). Defendants, Industrial Assets Corp. ("IAC"), Maynards Industries USA, LLC ("Maynards"), and Utica Leaseco, LLC ("Utica") (collectively "Defendants"), then removed the action to this Court. (Doc. 1.) Before the Court is Utica's Motion

to dismiss (doc. 2), IAC and Maynards' Motion to change venue (doc. 3), Transamerican's Motion to remand (doc. 11) and Transamerican's Motion for discovery (doc. 12).

## I.     BACKGROUND[1]

On December 1, 2016, Plaintiff participated in an auction ("the Auction") held online to sell equipment located in Enka, North Carolina. Maynards was the auctioneer of the Auction, and Utica the seller and owner of the equipment. IAC is alleged to have been working in concert with Maynards and Utica in the sale of the goods and the collection of the purchase funds from Plaintiff. Maynards is a Delaware limited liability company with its principal place of business in Delaware. Utica is a Florida limited liability company with its principal place of business in Michigan. IAC is a California business corporation with its principal place of business in California. Transamerican is a limited liability company organized under Alabama law which has an Alabama citizen as its sole member.

The Auction was accessible through multiple online platforms and was governed by the terms and conditions set forth on Bidspotter, an online auction platform. No other contract between Defendants and Plaintiff was formed. The Auction was advertised via the Biditup website and Transamerican accessed and

---

[1] The following facts are taken from Plaintiff's complaint, and the Court makes no ruling on their veracity.

bid in the Auction through the Bidspotter platform from its office in Tuscaloosa, Alabama. Defendants directed correspondence to Transamerican regarding the auction and the equipment sold. During the Auction, Transamerican noticed irregular bidding activity and became suspicious that the owner of the equipment may have been secretly placing shill[2] bids to increase the final bid price of the equipment.

In the week following the Auction, Transamerican contacted Maynards in order to schedule payment and removal of the equipment. According to Plaintiff, Maynards, Utica, and IAC began sending fraudulent correspondence, claiming it had agreed to burdensome terms and conditions. Maynards, Utica, and IAC threatened litigation by consent judgment to be filed in Burbank, California if Transamerican did not immediately comply. After weeks of negotiation, Maynards and Utica agreed to a different removal schedule. Transamerican claims that during negotiations, Maynards admitted to having entered shill bids on behalf of Utica in order to drive up the price at auction.[3] Despite this admission, Plaintiff closed on the equipment sale by wiring funds to Maynards on February 10, 2017.

## II. PLAINTIFF'S MOTION TO REMAND (Doc. 11)

---

[2] Shill bidding is defined as, "(on an online auction) the illegal practice of a seller or a seller's acquaintances placing bids on his or her goods in order to drive up the price." Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/shill-bidding.
[3] The Auction was not advertised as a reserve auction. (*See* Doc. 1 at 19; Doc. 14-2.)

## A. Removal Standard of Review

This Court, like all federal courts, is a court of "limited jurisdiction." *Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1134 (11th Cir. 2013). It is authorized to hear only those cases falling within "one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016). A defendant may remove an action initially filed in state court to federal court if the action is one over which the federal court has original jurisdiction. 28 U.S.C. § 1441(a). "[A] defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014) (quoting 28 U.S.C. § 1446(a)). For removal to be proper, the court must have subject-matter jurisdiction in the case. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Because Defendants removed this action, Maynards, Utica, and IAC have the burden of establishing that the case was properly removed. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). Any doubt about the existence of federal jurisdiction "should be resolved in

favor of remand to state court." *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) (internal citations omitted)).

## B. *Discussion of Plaintiff's Motion to Remand*

Transamerican contends that the case must be remanded due to a facial defect in the notice of removal; contending that because the identity of all members of Maynards LLC and Utica LLC, and their respective citizenships, were not alleged in the Notice of Removal it was improper.[4]

To establish diversity jurisdiction under 28 U.S.C. § 1332, each party must be completely diverse, with no plaintiff's citizenship overlapping any defendant's citizenship.[5] *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Indeed, "diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all the members . . . .'" *Carden v. Arkoma, Assocs.*, 494 U.S. 185, 195 (1990) (internal citations omitted). For example, "[t]o sufficiently allege the citizenships of these unincorporated business entities, a party must list the citizenships of all the members of the limited liability company . . . ." *Rolling Greens*

---

[4] Plaintiff does not contest that IAC is diverse. (*See* Doc. 11 at 4.)

[5] Plaintiff bases its argument for defeating subject matter jurisdiction upon the lack of complete diversity, not on a failure to meet the amount in controversy requirement. For this Court to have jurisdiction, the amount in controversy must exceed $75,000. According to Defendants, Plaintiff made an initial bid of $150,000 at the auction and Utica then bid $152,500. After a series of bids, Plaintiff placed a winning bid of $265,000. Thus, the amount in controversy requirement of 28 U.S.C. §1332 is considered satisfied. As such, the Court addresses only whether complete diversity is present. (*See* Doc. 1.)

*MHP, L.P. v. Comcast SCH Holdings, L.L.C.,* 374 F.3d 1020, 1022 (11th Cir. 2004) ("a limited liability company is a citizen of any state of which a member of the company is a citizen."). An individual is a citizen of the state in which he is domiciled.[6] *See Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974).[7]

Here, in the Notice of Removal, Defendants neither identified the individual members of the LLCs, Maynards and Utica, nor did they allege the citizenship of each member. (*See* Doc 1.) Defendants do, however, allege the identities and citizenships of each member in their Response to the Motion to Remand and Supplement to Notice of Removal. (*See* Doc 19.) Pursuant to 28 U.S.C. §1653, "[i]f a party fails to specifically allege citizenship in their notice of removal, the district court should allow that party 'to cure the omission' as authorized by § 1653." *Corp. Mgmt. Advisors, Inc. v. Artjen Complexus, Inc.,* 561 F.3d 1294, 1297 (11th Cir. 2009) (citations omitted). When determining whether a party has met the burden of proving diversity, the Court considers all of the evidence, both presented with the notice of removal, as well as that evidence submitted in response to the Motion to

---

[6] Domicile is defined as the place of "[one's] true, fixed, and permanent home and principal establishment, and to which [one] has the intention of returning whenever [one] is absent therefrom . . . .". *Id.* (internal quotations and citations omitted).
[7] Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981 are binding on this Court. *See Slater v. U.S. Steel Corp.*, 871 F.3d 1174 n.5 (11th Cir. 2017).

Remand. *See Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 753-55 (11th Cir. 2010).

Here, Defendants alleged the citizenship of all the members, including the respective trustees and beneficiaries, of both LLCs—Maynards and Utica—in their Response, showing in detail that all entities and members comprising the LLCs were all either citizens of Michigan or are domiciled in Michigan. Thus, the Court finds that Defendants have alleged enough in the body of their Response and Supplement to Notice of Removal, in conjunction with the attached affidavits, to establish that no citizenship of any Defendant overlapped with that of Plaintiff. Because complete diversity existed and the jurisdictional amount was met when Defendants' removed this action, the motion to remand is due to be DENIED.

## III.  UTICA'S MOTION TO DISMISS (DOC. 2) [8]

### A.  *Standard for 12(b)(2) Motion to Dismiss*

---

[8] Plaintiff also filed a Motion for Jurisdictional Discovery requesting Interrogatories and Requests for Production Limited to Personal Jurisdiction Issues to Utica, Maynards and IAC; in addition to depositions of corporate representatives of each Defendant. (Doc. 12.) "[W]hen facts that go to the merits and the court's jurisdiction are intertwined and genuinely in dispute, [a] part[y] ha[s] a 'qualified right to jurisdictional discovery,'" unless that party unduly delayed in seeking leave to initiate discovery. *Am. Civil Liberties Union of Fla., Inc. v. City of Sarasota,* 859 F.3d 1337, 1341 (11th Cir. 2017) (quoting *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 730 (11th Cir. 1982)). Plaintiff cited *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 730 (11th Cir. 1982) in support of its Motion. The case is distinguishable from this one in that in *Eaton,* jurisdiction was based upon the Interstate Land Sales Full Disclosure Act, and not of upon diversity of citizenship as it is here. *See id.* at 731. Because the Court finds that Defendants' supplement to their Notice of Removal is sufficient, Plaintiff's Motion for Discovery is due to be terminated as MOOT.

In a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff generally "bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988) (citing *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988)). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). The Court must treat facts alleged in the complaint as true if they are not controverted by affidavits submitted from the defendant. *Id.* However, if the defendant submits affidavits, the plaintiff must produce additional evidence supporting jurisdiction unless the defendants' affidavits are only conclusory. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). When the plaintiff's evidence conflicts with the defendant's evidence, the Court must "construe all reasonable inferences in favor of the plaintiff." *Id.*

## B. Discussion of Utica's Motion to Dismiss

"A federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *see also Daimler AG v. Bauman*, 134 S.

Ct. 746, 753 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). Personal jurisdiction is generally a two-step inquiry, as the Court must consider whether personal jurisdiction is consistent with the forum state's long-arm statute and whether the exercise of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). Here, "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Sloss Inds. Corp. v. Eurisol*, 488 F.3d 922 (11th Cir. 2007); *see also Ex Parte Edgetech I.G., Inc.*, 159 So. 3d 629, 633 (Ala. 2014). Thus, the Court need only consider the limits of the Due Process Clause. *Mut. Serv. Ins. Co.*, 358 F.3d at 1319.

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). There are two types of personal jurisdiction—general jurisdiction and specific jurisdiction—but both are based on the defendant's contacts with the forum state.

While "[a] physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident[;] . . . the defendant [must] have such contacts with Alabama that it should reasonably anticipate being haled into court [here]." *Ex parte Dill, Dill, Carr, Stonbraker & Hutchings*, P.C., 866 So. 2d 519 (Ala. 2003) (internal quotations and citations omitted). Determining whether jurisdiction is general or specific hinges upon both the quality and quantity of the contacts. "General jurisdiction applies where a defendant's activities in the forum state are substantial or continuous and systematic, regardless of whether those activities gave rise to the lawsuit . . . . A court has specific jurisdiction when a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit." *Leventhal v. Harrelson*, 723 So. 2d 566, 569 (Ala. 1998) (internal quotations and citations omitted).

### i. Agency theory of jurisdiction

Plaintiff argues that Utica is subject to personal jurisdiction as a result of its agency relationship with Maynards and IAC. Utica has conceded that it authorized Maynard and IAC to conduct the Auction on its behalf. (*See* Notice of Removal, Doc. 1 at 2-3) ("In fact, IAC was working together with Maynards as the auctioneer on behalf of Utica."). Transamerican also argues that Utica ratified the conduct of its agents by accepting Plaintiff's money and therefore the agency relationship

between the Defendants is indisputable. (*See* Doc. 14 at 5); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 n. 22 (1985) (recognizing for purposes of personal jurisdiction that commercial activities performed on a party's behalf "may sometimes be ascribed to the party"); *see also Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55–60 (1st Cir. 2002) (agent's acts may be attributed to principal for jurisdictional purposes when, under standard agency principles, agent is authorized to act on behalf of principal or principal ratifies agent's conduct).

Utica has pointed to several persuasive examples of courts being unwilling to extend personal jurisdiction over defendants who have used online bidding platforms, such as the ones used in the auction at issue here. However, none are binding. If only the shill bidding were at issue, the Court might be inclined to agree with Utica that putting up an item for sale in an auction that is available to anyone in the country is not sufficient contact with the forum. However, the shill bidding is *not* the only issue. Plaintiff has also alleged that both Maynards and IAC, on behalf of Utica, directed fraudulent telephone and electronic correspondence to Plaintiff in Alabama with the purpose of coercing it into onerous shipping and payment terms. These contacts were purposeful and ongoing. They not only had an effect in Alabama, but caused Transamerican to put itself in a detrimental

position. It is reasonable to conclude therefore that Maynards and IAC purposefully availed themselves of the forum, and, because they were acting on behalf of Utica, Utica has also. Further, because Maynards conducts and advertises its auctions in Alabama with some regularity, (*see e.g.* Doc. 14-1), Alabama has a particular interest in ensuring fair and ethical business practices for its citizens and businesses. In light of Maynards' and IAC's contacts with the forum, and the agency relationship amongst the three entities, Utica has purposefully availed itself of the privileges of conducting activities in Alabama. In doing so, Utica "received the benefits and protection of the laws of the state" and is therefore subject to personal jurisdiction in Alabama. *Int'l Shoe*, 326 U.S. at 320.

### ii. Jurisdiction under the Conspiracy theory

In the Complaint, Transamerican averred that "[d]efendants acted in concert to accomplish the tortious and unlawful aims set forth [in the Complaint]." (Complaint, Doc 1 at 22.) Transamerican argues that Utica is subject to personal jurisdiction in Alabama because it conspired with Maynards and IAC to unlawfully drive up the final price of the equipment by placing shill bids. "Alabama courts have recognized that, in an appropriate case, specific jurisdiction can be based upon the purposeful conspiratorial activity of a nonresident defendant aimed at an Alabama plaintiff." *Ex parte Alamo Title Co.*, 128 So. 3d 700, 713 (Ala. 2013)

(internal citations omitted). To establish personal jurisdiction under a conspiracy theory, "the plaintiff must plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." *Id.* (quoting *Ex parte McInnis*, 820 So. 2d 795, 806-07 (Ala. 2001) (internal quotations omitted)). Civil conspiracy in Alabama involves two elements: (1) concerted action by two or more persons (2) to achieve an unlawful purpose or a lawful purpose by unlawful means. *See Luck v. Primus Auto. Fin. Servs., Inc.*, 763 So. 2d 243, 247 (Ala. 2000). "Bald speculation or a conclusory statement that individuals are co-conspirators is insufficient to establish personal jurisdiction under a conspiracy theory." *Ex parte McInnis*, 820 So. 2d at 806 (internal quotations and citations omitted). However, the burden of proof here "is not heavy, especially 'when determination of the jurisdictional facts is intertwined with and may be dispositive of questions of ultimate liability.'" *Ex parte Reindel*, 963 So. 2d 614, 623 (Ala. 2007) (internal citations omitted). Further, it is not necessary that the overt act physically take place within the forum state. *See Bowman v. Hodge Mgmt. Group, LLC*, 2016 WL 3483170 at *6 (M.D. Ala., June 27, 2016) (finding a single phone call to the plaintiff in furtherance of the conspiracy a sufficient overt act) (citing *Corp. Waste Alts., Inc. v. McLane*, 896 So. 2d 410, 413 (Ala. 2004); *see also Wenger Tree Serv. v. Royal Ruck & Equip., Inc.*, 853 So. 2d 888, 895-96 (Ala. 2002)(stating that a nonresident

defendant "should reasonably anticipate being haled into court" where its commercial efforts are "purposefully directed" toward a resident of another state)).

Plaintiff alleges in the Complaint that Defendants worked together to send fraudulent correspondence to Plaintiff in Alabama in order to "coerce Plaintiff into closing a transaction that involved fraudulent bidding." (Complaint, Doc. 1 at 21.) Because the nature of a conspiracy allegation is such that it can be fleshed out in greater detail through the discovery process, the Court finds that Plaintiff has pled its conspiracy claims sufficiently enough to meet the burden of proof for jurisdictional purposes by alleging that Maynards, Utica, and IAC worked together to commit certain acts in furtherance of the conspiracy. (*See e.g.* Complaint, Doc. 1 at 18) ("Upon information and belief, IAC was acting in concert with Utica in the sale of the Goods and the collection of purchase funds from Plaintiff."). Moreover, the overt act alleged in the Complaint is one of correspondence into the forum state.[9] Like the phone call that was sufficient in *Bowman*, Defendants' repeated correspondence into Alabama suffices as overt acts taken within the forum. Therefore, personal jurisdiction is proper over Utica under the conspiracy theory.

---

[9] *See e.g.* Doc. 14 ("Both IAC and Maynards communicated with Plaintiff by telephone about the auction as it was taking place; advertised the auction in Alabama; provided the auction brochure in Alabama; directed telephone calls, emails and letters regarding the auction and goods to Plaintiff in Alabama.").

### iii.  Minimum Contacts

Plaintiff avers that "notwithstanding the fact that this Court has personal jurisdiction over Utica by virtue of its personal jurisdiction over Utica's agents . . . jurisdictional discovery may reveal that Utica independently has sufficient minimum contacts with Alabama." (*See* Doc. 14 at 8.) Arguing that "Utica directed its fraudulent and unlawful shill bidding towards Alabama." (*Id.*) Indeed, the record shows that Utica admitted to having bid against Transamerican in the Auction. (*See* Doc. 1 at 3) ("Utica then bid . . . .")). Utica claims that although it "has registered to do business in Alabama and has appointed an agent for service of process, [it] is not currently conducting business in Alabama[;]" and "[i]n its history, Utica has participated in one business transaction in Alabama." (Doc. 2 at 2) (The lone transaction is purportedly "unrelated to Plaintiff's claims" and "began in 2013 and concluded in 2015."). Plaintiff attached to its Response in opposition to Utica's Motion to Dismiss, UCC records which appear to indicate that Utica engaged in at least twelve commercial transactions in the state of Alabama between 2013 and 2015. (Doc. 14-3 at 2-3.) In its reply brief (doc. 18), Utica wholly failed to respond to Plaintiff's allegations regarding its contacts with Alabama as evidenced by the UCC report. Even if the Court had found that no personal jurisdiction existed on the basis of either the agency theory or the

conspiracy theory, the Court finds that it would be inappropriate to grant the 12(b)(2) motion at this stage in the litigation for lack of minimum contacts. The twelve transactions as evidenced by the UCC report, considered in conjunction with its registration to do business in Alabama, as well as its having an agent for service of process, would prove to be sufficient contacts in order to confer jurisdiction over Utica. Because there is a conflict, it is incumbent upon the court "to construe all reasonable inferences in favor of the plaintiff." *Madara*, 916 F.2d at 1514 (internal citation omitted). As such, Utica's 12(b)(2) motion to dismiss is due to be DENIED.

## IV.  IAC & MAYNARDS' MOTION TO CHANGE VENUE (DOC. 3)

"For the federal court system, Congress has codified the doctrine and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action." *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430 (2007) (citing 28 U.S.C. § 1404(a)[10] ("For the convenience of parties and witnesses, in the interest of justice,[11] a district

---

[10] cf. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.")

[11] The relevant factors to consider under a 1404(a) transfer include: "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of

court may transfer any civil action to any other district or division where it might have been brought.")). Because "the federal courts traditionally have accorded a plaintiff's choice of forum considerable deference," it is incumbent upon the "movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). Indeed, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (citation omitted). In this Circuit, "[t]he decision to transfer a case to another district is within the sound discretion of the trial court." *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991) (citation omitted). When exercising its discretion, the court should undertake an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

Defendants claim that transfer is in the interest of justice because: (1) 'material' witnesses will be unable to attend trial in Tuscaloosa, (2) inspections and viewings of the equipment, if needed, can only occur in North Carolina, (3) a district court in North Carolina will have greater familiarity with evaluating claims

---

forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n. 1 (11th Cir. 2005) (citing *Gibbs & Hill, Inc. v. Harbert Int'l, Inc.*, 745 F. Supp. 993, 996 (S.D.N.Y.1990)).

under North Carolina statutes, and (4) for the sole reason to avoid the 'difficult jurisdictional question' with respect to one defendant, Utica.

In their motion and reply, Defendants fail to provide sufficient proof that their witnesses are materially relevant enough to warrant considerations of convenience. They assert that three witnesses would be unavailable to attend trial in Tuscaloosa.[12] In addition, they assert that they have, "knowledge related to Plaintiff, other potential bidders at the auction, potential post-auction buyers of the Equipment, Plaintiff's inspections of the Equipment and the building housing the equipment, and details of an occupancy agreement Plaintiff entered after the auction." (Doc. 3 at 5.) The Court finds this insufficient to support an assertion that North Carolina is a more convenient forum. Because Plaintiff's claims mainly pertain to the actual bidding process, the potential observance of the possible removal of the equipment is irrelevant. In contrast, Plaintiff has provided specific witnesses who were personally involved in the auction bidding. Because they possess personal knowledge of the events at issue (those surrounding the Auction), Plaintiff's witnesses, Michael Freidman, Luther S. Pate and Alan Davis, are

---

[12] Defendants provided affidavits from Wayne Merrit (*See* Doc. 3 at 12-13) and Jeff Davis (*See* Doc. 3 at 16-18), whom are representatives of Low & Bonar, the owner of the building where the Equipment sold at the Auction is housed. Additionally, they attached the affidavit of William Newman (*See* Doc. 3 at 20-21), who "had contact with Plaintiff's representative Stanley Pate regarding related [sic] to Plaintiff's removal of the equipment from its current location, [and] is also unavailable for a trial in Tuscaloosa." (Doc. 3 at 5-6.)

considered more materially relevant and their inability to travel to North Carolina is afforded more weight. (*See* Doc. 15-1.)

It is difficult to see any necessity or purpose in viewing or inspecting the equipment sold in the Auction—a reason Defendants assert to support their motion.[13] Not only are there no claims in the Complaint pertinent to the equipment which would necessitate inspection, Defendants provide no reason why a possible inspection would occur, but merely claim that *if* any inspections were to take place, they would be done in North Carolina, which would weigh in favor of a transfer. (*See* Doc. 3 at 6.) If the equipment were a source of proof applicable to the claims in the Complaint, this would be a relevant factor to evaluate. As it stands, the possibility of needing inspections of the property is slim, and thus of no consequence in determining whether the transfer should be made.

Third, it goes without saying that a North Carolina district court would have greater familiarity with North Carolina state statutes. However, "in cases such as the present, where the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." *Van Dusen*, 376 U.S. at 639. The

---

[13] As such, the situs of the subject equipment is not a consideration weighing in favor of transfer because Plaintiff's claims stem from the Auction bidding process itself.

Supreme Court "deemed that exception necessary to prevent 'defendants, properly subjected to suit in the transferor State,' from 'invok[ing] § 1404(a) to gain the benefits of the laws of another jurisdiction . . . .'" *Atl. Marine Constr. Co. v. U.S. D. Ct. W.D. Tex.*, 134 S. Ct. 568, 579 (2013) (citations omitted). A transfer would require the transferee forum to evaluate the state law claims of fraudulent suppression, fraud and fraudulent inducement, as well as the conspiracy and breach of contract claims, under Alabama law. This Court is better suited to evaluate those five state law claims than a North Carolina court. Additionally, the fact that the state law claims requiring an analysis under Alabama law are more numerous than the two claims brought under North Carolina statutes weighs against transfer.

Finally, Defendants fail to support their strong assertion that the case should be transferred for the sole reason of avoiding the jurisdictional question with respect to Utica. Defendants neglected to cite any binding authority to the 11th Circuit or the forum court. A plaintiff who has filed for additional discovery requests or otherwise diligently pursued jurisdictional discovery opportunities is entitled to the occasion to discover facts that would support her allegations of jurisdiction. *See Am. Civil Liberties Union of Fla., Inc.*, 859 F.3d 1337 at 1341.

Because the Court has determined that it possesses personal jurisdiction over Utica, an argument for transfer on this ground fails. *See* Section III, *supra*.[14]

In sum, the Court finds that a transfer "would merely shift inconvenience from the defendants to the plaintiff . . . ." *Robinson*, 74 F.3d at 260. As such, Defendants motion to transfer is due to be DENIED.

## V.   CONCLUSION

For the reasons discussed above, Transamerican's Motion to Remand (doc. 11) is due to be DENIED, and its Motion for Discovery (doc. 12) due to be terminated as MOOT; Utica's Motion to Dismiss (doc. 2) is due to be DENIED and IAC & Maynards' Motion to Change Venue (doc. 3) is also due to be DENIED. An Order consistent with this Opinion will be entered herewith.

**DONE** and **ORDERED** on February 12, 2018.

L. Scott Coogler
United States District Judge

190685

---

[14] It their Reply, Defendants cite *First Federal Sav. and Loan Ass'n v. Berger*, 672 F. Supp. 1454, 1457 (M.D. Ga. 1987) for the proposition that the case should transferred because it would be "preferable to a jurisdictional battle in the plaintiff's chosen forum." (Doc. 17 at 2.) Not only is the case non-binding, it is distinguishable. In *Berger*, at least two other actions which would affect the outcome of the *Berger* case were pending in New Orleans, Louisiana. When considered with other factors, that fact enabled defendants to sustain the burden of showing that a transfer from Georgia to Louisiana was proper. Defendants have made no such showing here (regarding other cases pending in North Carolina), therefore this case is unhelpful to them.